IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID MENKEN, a single man,<br><br>    Plaintiff,<br><br>vs.<br><br>GERRY F. EMM, husband; MAXINE C. EMM, wife; COLDWELL BANKER ITILDO, INC., a foreign corporation; MARSHA L. TOMERLIN, wife; JOHN DOE TOMERLIN; DAVID J. MORANDI, husband; JANE DOE MORANDI, wife; SCARPELLO, HUSS & OSHINSKI, LTD., a Nevada Law Firm,<br><br>    Defendants. | No. CV 04-598-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is the Amended Motion for Summary Judgment and Dismissal by Defendants Coldwell Banker and Marsha Tomerlin (Dkt.#84) and Plaintiff David Menken's Motion for Partial Summary Judgment (Dkt.#86).

**I.    Factual Background**

Coldwell Banker and Marsha Tomerlin ("Defendants") obtained a judgment against David Menken ("Plaintiff") in Nevada District Court that was affirmed by the Ninth Circuit. (Dkt.#85 Exh. 2) The merits of the Nevada judgment are not at issue here; this action derives from their attempts to enforce the Nevada judgment in Arizona.

1  The Defendants domesticated the Nevada judgment in Arizona and recorded it with
2 the Maricopa County Recorder's office on April 29, 2003.  The Nevada judgment awarded
3 costs ($1,413.63) and attorney's fees ($28,470.00) against Plaintiff.  (Dkt.#85 Exh. 2)

4  The property in question, located at 30019 North 150th St. in Scottsdale, Arizona was
5 apparently owned by Plaintiff from February 25 to April 3, 2003, according to the declaration
6 of Plaintiff.  (Dkt.#88 at 2)  Plaintiff states that he transferred the property to a company he
7 owned, Los Pintos LLC on April 3, 2003.  (Id.)   He also states that Los Pintos transferred
8 the property back to him on August 1, 2003.  (Id.)

9  In August, a letter was sent to Plaintiff explaining that the payoff amount of the lien
10 against the property would be $79,985.20.  (Dkt.#85 Exh. 5)  This amount was based on
11 $29,883.63 for the judgment itself, $13,361.05 in interest on that amount (accruing from the
12 date of judgment to August 20, 2003), and $36,740.52 for costs and legal fees in attempting
13 to locate Plaintiff and his assets.  (Id.)

14  Plaintiff's attorney responded, stating that Plaintiff's liability extended only to the
15 amount of the judgment itself plus interest and did not include post-judgment costs of
16 collection.  (Dkt.# 85 Exh.5)

17  The Defendants' attorney responded that the judgment ($29,883.63) plus interest (as
18 of September 15, 2003) meant that the total amount owed would be $43,367.49.  (Dkt.#85
19 Exh. 5)  He also explained that his clients had been attempting to collect the money  owed
20 since September 1998 in several states and that "[a]t each stage, Mr. Menken has conducted
21 what could be considered fraudulent transactions to remove real property held in his name
22 to entities controlled by he and other individuals."  (Id.)  Apparently, "following writs of
23 attachment and/or garnishment against these corporations," the entities were "quickly
24 dissoved" in an attempt to evade enforcement of the judgment."  Defendants' attorney
25 offered to remove the lien if Plaintiff paid the undisputed $43,367.49 directly to his client and
26 placed the remaining disputed funds in an account that would be paid to the party the court
27 determined it was owed.  (Id.)

28

Plaintiff rejected this offer and counteroffered to pay only the $43,367.49 to get the lien removed. The Defendants rejected the counteroffer. (Id.) Plaintiff asked for a breakdown of the $39,000 in collection fees and stated that he "had a pending offer to purchase the subject property, but he cannot complete the sale without removal of your client's *lis pendens*." (Id.) He further demanded that the Defendants provide legal support for their position that collection fees should be part of the payoff amount. (Id.) The Defendants responded with a letter that cited a few exceptions to the "American Rule" (that parties ordinarily bear their own legal expenses) in cases of bad faith and oppressive litigation practices, as well as willful violation of a court order. (Id.)

The foregoing correspondence took place from August to November 2003. In March 2004 Plaintiff filed a complaint. (Dkt.#1) After this case was appealed to the Ninth Circuit, Plaintiff filed his First Amended Complaint on April 25, 2008, alleging that by filing the domesticated judgment with the Maricopa County Recorder's Office, the Defendants violated A.R.S. § 33-420 because the resulting lien was "groundless and invalid." (Dkt.#80 at 5) The First Amended Complaint also alleged that this purported wrongful lien created claims for negligence, wrongful interference with business expectancy, and intentional infliction of emotional distress. (Dkt.#80 at 3-5)

The Defendants move for Summary Judgment and Dismissal on the following grounds: (1) William Tomerlin (one of the Defendants) was never properly served, (2) Plaintiff does not own the property he is alleging that he was improperly preventing from selling due the lien, (3) the judgment lien did not prevent any sale and Plaintiff failed to mitigate damages, (4) no liability results from A.R.S. § 33-420 even if it does apply, (5) the intentional infliction of emotional distress claim is time-barred and meritless, (6) the Defendants did not interfere with a valid business expectancy, and (7) the negligence claim also fails. (Dkt.#84 at 3-12)

Plaintiff, in turn, moves for partial summary judgment as to liability, arguing that the statute of limitations has run for enforcing the Nevada judgment (Dkt.#90 at 5)

## II. Discussion

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the nonmoving party and draws any reasonable inferences in the nonmoving party's favor. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Insufficient Service of Process as to William Tomerlin

Defendants argue that William Tomerlin should be dismissed from the case because he was never properly served. Under Federal Rule of Civil Procedure 4(m), a plaintiff has 120 days after the filing of the complaint to serve the defendants. If service is not accomplished within that deadline, the court must either dismiss the action without prejudice as to that defendant or, if good cause is shown for the delay, order that service be accomplished within a specified time. William Tomerlin has apparently never been served process, a point which Plaintiff does not dispute. (Dkt.#91 at 3) Plaintiff instead argues Will Tomerlin waived the service of process requirement by appearing in the case when he filed a motion to dismiss along with the other defendants on April 2, 2004. However, joining a motion to dismiss constitutes only a limited appearance and does not operate as a waiver of service of process. *See Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986); *Mackey v. Spangler*, 81 Ariz. 113, 117, 301 P.2d 1026, 1029 (1956). Thus, no waiver

occurred. Assuming without deciding that the more generous date of the Amended Complaint (rather than the initial Complaint) should be used to calculate the deadline for service, the deadline has still passed. The Amended Complaint was filed on April 25, 2008, making the service deadline August 25, 2008. Given that Plaintiff never served William Tomerlin and has offered no good cause for this failure, he is dismissed from this litigation.

### B. Plaintiff's Ownership of the Property

Defendants argue that Plaintiff's lack of ownership of the Property means that all of his claims fail. If Plaintiff did not own the Property, then filing a judgment against him could not have created a lien on the Property because the judgment made no reference to any property but merely referred to Plaintiff personally. The problem with this argument is that even if Plaintiff did not own the property at the time the lien was created, its subsequent transfer to him created a lien. *Dempsey v. Oliver*, 93 Ariz. 238, 379 P.2d 908 (1963) (explaining that judgment liens attach to after-acquired property immediately). The Court's review of the exhibits attached to the various declarations and statements of facts has not revealed who currently owns the property, although Plaintiff presented evidence that he owned it in August 2003 after the lien attached to it. The fact that the property may have been listed on the bankruptcy schedule of another entity does not establish who currently owns the property, and even assuming that it proved that Plaintiff no longer did, this fact would not eliminate any cause of action Plaintiff may have had for having to remove a falsely filed lien prior to transferring it. Defendants have not proved to the satisfaction of this court that there is no genuine issue of material fact that Plaintiff never owned the property in question. Thus, summary judgment on this ground is denied.

### C. Plaintiff's Failure to Mitigate Damages

Defendants move for summary judgment on the ground that Menken failed to mitigate damages. (Dkt.#84 at 5) They argue that it is "ludicrous" to believe, as Plaintiff charges, that "he allowed an alleged sale that would supposedly net him $700,000 to fall through as a result of $39,000 in disputed funds." (Dkt.#84 at 6) They further argue that there is no evidence that any sale could not be completed as a result of the lien. (Id.) In their view,

- 5 -

1   Plaintiff's failure to agree to their proposal of interpleader regarding the disputed funds
2   means that he should recover nothing because such an agreement would have mitigated any
3   damages Plaintiff might have suffered. (Id.) However, though it is difficult to believe that
4   Plaintiff would have turned down a profit of $700,000 because he did not want to pay
5   $39,000 he did not owe, this is a credibility determination that must be left to the jury.
6   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the
7   weighing of the evidence, and the drawing of legitimate inferences from the facts are jury
8   functions, not those of a judge . . . ."). Moreover, Plaintiff's failure to mitigate damages
9   would be a limitation on the recoverable amount, not an absolute defense to the claims at
10  issue here. Thus, summary judgment on this ground is denied.

### C. Liability Under A.R.S. § 33-420

In this section the Court will address both Defendants' motion for summary judgment and Plaintiff's motion for summary judgment as to liability only. Defendants move for summary judgment that they have no liability under A.R.S. § 33-420. Plaintiff moves for partial summary judgment that Defendants are liable under this statute.

Under A.R.S. § 33-420 (A),

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

Thus, to violate this section, there must be a document that is forged, groundless, or that contains a material misstatement or false claim that has been recorded at the county recorder's office. However, no such document exists here. The only document that Defendant caused to be recorded was the domesticated Nevada judgment that specifies that Plaintiff owed a total of $29,883.63 plus interest to Defendants (which Plaintiff does not dispute). The domesticated judgment became a lien in accordance with A.R.S. § 33-963,

- 6 -

which provides that a federal court judgment becomes a lien on real property when it is recorded. Defendants' refusal to remove the Nevada judgment unless Plaintiff paid the additional disputed $39,000 costs of collecting and enforcing the judgment was communicated in a letter and was part of the parties' negotiations surrounding the recorded lien; however, these letters were never recorded and do not meet a fundamental requirement of the statute, that the groundless, false, or misstated claim be *recorded*. Assuming without deciding that Defendants were not entitled to claim the costs of collection and enforcement of the judgment and that Plaintiff was willing to pay off the undisputed amount listed in the judgment (including interest), Plaintiff would bear the burden of proving that Plaintiff wrongfully refused to *remove* the lien despite his payment of the undisputed $29,883.63 plus interest that is specified in the judgment. However, this claim would be for the improper refusal to remove a proper lien; not an improper refusal to remove a "false, materially misstated, groundless, or forged lien"; thus, any such claim would not arise under A.R.S. § 33-420, but under another statute.

Alternatively, Plaintiff argues that the statute of limitations for domesticating the Nevada judgment had run. Under A.R.S. § 12-544, there is a four-year statute of limitations for domesticating foreign judgments. The parties dispute whether the four-year statute began to run as of the date of the trial court's order or the date of the termination of the appeal of the Nevada judgment. According to Arizona case law in effect at the time, *Day v. Wiswall*, 11 Ariz. App. 306, 313, 464 P.2d 626, 633 (1970), the tolling of the statute began to run at the date of the termination of the appeal. This holding was subsequently overruled in 2007 by *Grynberg v. Shaffer*, 216 Ariz. 256, 260, 165 P.3d 234, 238 (App. 2007), which held that tolling begins when the trial court's judgment becomes final. Here, the two Nevada trial court orders were entered on September 8 and 28, 1998. Plaintiff appealed the two orders to the Ninth Circuit and they were affirmed by mandate on June 26, 2000. The judgment was domesticated in Arizona on April 29, 2003, making it timely if the *Day* date is used, and untimely if the *Grynberg* date is used.

1 Before proceeding, it appears useful to make a subtle distinction. The Court is not deciding whether to enforce a lien that would be considered untimely under *Grynberg*, but merely whether to grant Plaintiff a cause of action against Defendants for filing a lien that subsequent case law would later determine to be invalid. In the first situation, this Court would be bound to follow *Grynberg*. In the latter situation (here), however, it would be inappropriate to ascribe the scienter requirement implied by "forged, groundless, materially misstated or false" to Defendants for filing the lien on a date that would not be determined to be inappropriate by the Arizona Court of Appeals until nearly four years in the future. While the lien may be technically unenforceable under *Grynberg*, Defendants' decision to file it four years before *Grynberg* was decided does not approach the level of scienter required by the statute.

Moreover, the correspondence before the Court indicates that the negotiations for the removal of the lien took place from September to November 2003, well before *Grynberg* was decided. Thus, for the same reasons indicated above, Defendants would not be liable to Plaintiff for refusing to remove the lien (under subsection (C) to A.R.S. § 33-420) on statute of limitations grounds in 2003.

Because there is no genuine issue of material fact that the negotiations surrounding the lien were not recorded documents and there is no dispute about when the lien was filed, summary judgment is granted in favor of Defendants regarding this claim. Plaintiff's motion for partial summary judgment regarding liability only on this claim is denied.

**D.     Intentional Infliction of Emotional Distress**

Defendants move for summary judgment regarding Plaintiff's Intentional Infliction of Emotional Distress claim on two bases: (1) it is time-barred and (2) Plaintiff provided no evidence of severe emotional distress.

Defendants argue that Plaintiff's Intentional Infliction of Emotional Distress claim is time-barred because it apparently was not alleged in the initial Complaint and was not raised until the Amended Complaint. (Dkt.#84 at 10) However, under Federal Rule of Civil Procedure 15(b), an amendment to a pleading relates back to the original pleading where "the

1 amendment asserts a claim or defense that arose out of the conduct, transaction, or 2 occurrence set out – or attempted to be set out – in the original pleading." Here, Plaintiff's 3 claim for Intentional Infliction of Emotional Distress is based on the allegation that 4 Defendants refused to remove the judgment lien with the intention of causing Plaintiff severe 5 emotional distress. Thus, the same underlying transaction is at the heart of the new claim. 6 Therefore, this Court will allow the Amended Complaint to relate back to the date of the 7 original Complaint.

8 However, because Plaintiff has provided no evidence of severe emotional distress, this 9 claim cannot survive summary judgment. Arizona requires three elements to establish a 10 claim for the tort of intentional infliction of emotional distress: "(1) the conduct by the 11 defendant must be extreme and outrageous; (2) the defendant must either intend to cause 12 emotional distress or recklessly disregard the near certainty that such distress will result from 13 her conduct; and (3) severe emotional distress must in fact occur as a result of the defendant's 14 conduct." *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996). Summary judgment 15 is required against a party "who fails to make a showing sufficient to establish the existence 16 of an element essential to that party's case, and on which that party will bear the burden of 17 proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Finding that Plaintiff has 18 failed to make such a showing regarding severe emotional distress, summary judgment is 19 granted in favor of Defendant regarding this claim.

20 **E.     Interference with a Valid Business Expectancy**

21 Defendants move for summary judgment regarding Plaintiff's claim that they 22 improperly interfered with Plaintiff's business expectancy. To make out a prima facie case 23 for interference with a valid business expectancy, a party must show (1) the existence of a 24 valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the 25 interferer intentionally induced or caused termination of the business expectancy; and (4) 26 damage suffered as a result of termination of the business expectancy. *Dube v. Litkins*, 216 27 Ariz. 406, 412, 167 P.3d 93, 99 (2007). Defendants argue that Plaintiff's claim that he 28 received an offer of $1.5 million for the property must fail because the offer is not

1  documented except by Plaintiff's affidavit. However, Plaintiff does provide a written exhibit
2  documenting what purports to be an offer to sell the property for $1.3 million. (Dkt.#88
3  Exh.8) Because Plaintiff has provided some evidence tending to support his claim and
4  because this issue is a question of fact that requires a weighing of Plaintiff's credibility, it is
5  best left to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus,
6  summary judgment is denied regarding this claim.

7  **F.   Negligence**

8  Defendants move for summary judgment regarding Plaintiff's claim for negligence.
9  Defendants argue that Plaintiff's negligence claim must fail because Defendants owed
10 Plaintiff no duty of care and for the same reason that his A.R.S. § 33-420 claim fails.
11 (Dkt.#84 at 13) Though Plaintiff disagrees with the characterization that the negligence
12 claim mirrors the statutory claim, he articulates no basis, either in statute or in case law, for
13 finding that Defendants owed Plaintiff a duty of care. (Dkt.#91 at 9) Without a duty of care,
14 there can be no breach of the duty of care. *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d
15 228, 230 (2007) (explaining that "absent some duty, an action for negligence cannot be
16 maintained.") Because Plaintiff has failed to establish a duty of care, summary judgment on
17 this claim is granted in favor of Defendants.

18 Both parties request attorneys' fees; however neither side has provided any statutory
19 support or case law that would authorize such an award.

20 In summary, (1) Will Tomerlin is dismissed from this litigation, (2) Defendants'
21 motion for summary judgment on the grounds that Plaintiff never owned the property in
22 question is denied, (3) Defendants' motion for summary judgment on the grounds that
23 Plaintiff failed to show that the lien prevented sale and failed to mitigate damages is denied,
24 (4) Defendants' motion for summary judgment regarding A.R.S. § 33-420 is granted, (5)
25 Plaintiff's motion for summary judgment regarding liability only is denied, (6) Defendants'
26 motion for summary judgment regarding Plaintiff's intentional infliction of emotional
27 distress claim is granted, (7) Defendants' motion for summary judgment regarding Plaintiff's
28

interference with a valid business expectancy claim is denied, and (8) Defendants' motion for summary judgment on Plaintiff's negligence claim is granted.

Therefore, Plaintiff's claim for intentional interference with a valid business expectancy appears to be the only remaining claim in this litigation.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' Motion for Summary Judgment and Dismissal (Dkt.#84) in part and dismissing William Tomerlin from the case.

**IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment and Dismissal (Dkt.#84) regarding the following claims: (1) claims based on A.R.S. § 33-420, (2) intentional infliction of emotional distress, and (3) negligence.[1]

**IT IS FURTHER ORDERED** denying in part Defendants' Motion for Summary Judgment and Dismissal (Dkt.#84) regarding Plaintiff's claim for wrongful interference with business expectancy.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Partial Summary Judgment. (Dkt.#86)

**IT IS FURTHER ORDERED** denying both parties' requests for attorney fees.

**IT IS FURTHER ORDERED** setting this matter for a Status Hearing on January 13, 2009 at 3:00 p.m. to set a Trial date and a Final Pre-trial Conference date for the sole remaining claim.

DATED this 11th day of December, 2008.

_____
Mary H. Murgula
United States District Judge

---

[1] These claims are set forth respectively as the Fourth, Third, and First claims for relief in Plaintiff's First Amended Complaint. (Dkt.#80)

- 11 -